**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Bruner, et al., | No. CV-18-00664-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, | |
| Defendant. | |

Pending before the Court are Defendant City of Phoenix's Motion for Summary Judgment on Plaintiff Bruner's Claim (Doc. 128) and Motion for Summary Judgment on Plaintiff Cerda's Claim (Doc. 129). Plaintiff Bruner filed a Response in Opposition (Doc. 132) and Plaintiff Cerda filed a Response in Opposition (Doc. 133). The City filed Replies (Docs. 136, 137).[1]

**I. BACKGROUND[2]**

Plaintiffs, who are City employees, have each brought a retaliation claim against the City under Title VII. (Doc. 1 ¶ 1).

---

[1] Plaintiffs have requested oral argument. The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] As a sanction for discovery violations, the Court previously granted summary judgment in favor of the City on Plaintiffs' racial discrimination claims. (Doc. 110; Doc. 116; Doc. 120 at 159-60). The Court further precluded Plaintiffs "from introducing any claims of racial harassment to support [their] retaliation claim[s] . . . ." (Doc. 120 at 60). Accordingly, the factual background will omit any and all references to racial discrimination.

**A.     Ms. Cerda**

Ms. Cerda began working for the City as a secretary in the Fire Department in 2005 and laterally transferred to the City's Water Service Department in 2010. (Doc. 129 at 2; Doc. 133 at 2). In 2017, Ms. Cerda applied for and received a promotion to Support Services Aide. (Doc. 129 at 2). Ms. Cerda is currently still employed as a Support Services Aide in the City's Water Service Department. (Doc. 129-1 at 46).

When Ms. Cerda transferred to the City's Water Service Department in 2010, she worked in the 23rd Avenue Wastewater Treatment Plant ("23rd Ave Facility"). (Doc. 133 at 2; Doc. 133-1 at 3). It was at the 23rd Ave Facility that a co-worker, Ms. Christina Chavez, is alleged to have begun harassing Ms. Cerda. (Doc. 133 at 2). For example, Ms. Chavez falsely told other employees that Ms. Cerda was cheating on her husband by having sex with coworkers and that she had "danced" for male co-workers in the breakroom at work. (Doc. 133 at 2; Doc. 133-1 at 3). Ms. Cerda complained to her supervisors at the 23rd Ave Facility about Ms. Chavez's remarks. (Doc. 133 at 3). After Ms. Cerda complained about Ms. Chavez's remarks, Ms. Chavez refused to answer her work-related questions and refused to assist her in performing her work duties. (*Id.*)

In 2011, Ms. Cerda transferred to the 91st Avenue Water Treatment Plant ("91st Ave Facility"). (Doc. 129-1 at 49; Doc. 133 at 3). However, even after Ms. Cerda transferred to the 91st Ave Facility, she still had interaction with Ms. Chavez in order to perform her job duties. (Doc. 133 at 3). Ms. Chavez continued to harass Ms. Cerda by complaining to Ms. Cerda's supervisors that "[Ms. Cerda] was stupid, lazy, talking on the phone all of the time, sleeping on the job, spending too much time in the bathroom, having sex with co-workers at work, committing adultery on her husband, taking too long of breaks, and taking too long for lunch." (*Id.* at 3-4). Ms. Cerda continued to complain to her supervisors at the 91st Ave Facility about Ms. Chavez's behavior and her failure to contribute to group responsibilities. (Doc. 133 at 4). Despite Ms. Cerda's complaints regarding Ms. Chavez, in 2014, the City decided to transfer Ms. Chavez to the 91st Ave Facility where Ms. Cerda was working. (Doc. 129-1 at 49).

After Ms. Chavez's transfer, she continued to falsely tell Ms. Cerda's supervisors that Ms. Cerda was neglecting or otherwise not performing her job duties. (Doc. 133 at 4). Thus, Ms. Cerda continued to complain about Ms. Chavez's conduct to her direct supervisor, Ms. Robyn Cramer. (*Id.*) In 2016 and 2017, after Ms. Bruner, the other Plaintiff in this action and Ms. Cerda's coworker, filed an internal complaint against Ms. Chavez, Ms. Cerda was interviewed on three occasions by the City's investigators regarding Ms. Chavez's behavior. (*Id.*)

Ms. Chavez's harassment culminated in April 2017 when she attempted to run Ms. Cerda over with her car. (*Id.* at 5). Shortly thereafter, Ms. Chavez transferred to the 23rd Ave Facility and the two women no longer had any contact. (Doc. 129-1 at 50). The City undertook steps and facilitated meetings and training sessions to improve the working relationship between Ms. Cerda and Ms. Chavez. (Doc. 129 at 4; Doc. 133 at 5-6). In August 2017, Ms. Chavez filed a complaint that accused Ms. Cerda of calling her a bitch at work. (Doc 129 at 7). On August 15, 2017, Ms. Cerda also filed a United States Equal Employment Opportunity Commission ("EEOC") Charge against the City. (Doc. 1-1 at 4).

### B. Ms. Bruner

Ms. Bruner began working for the City as a secretary in July 2005. (Doc. 132 at 2). Since April 2011 she has worked in the Water Services Department. (*Id.* at 2). In 2015, Ms. Bruner was promoted to a service aide role and in 2016 she was promoted to an administrative aide role. (Doc. 128 at 2). Beginning in May 2011, Ms. Chavez began harassing Ms. Bruner. For example, Ms. Chavez falsely told coworkers that Ms. Bruner was a swinger, a homewrecker, and engaged in extramarital affairs in the workplace. (Doc. 132 at 2). Ms. Bruner complained to her supervisors about Ms. Chavez's behavior.

After Ms. Bruner complained, Ms. Chavez retaliated against Ms. Bruner by physically bumping into Ms. Bruner when she passed her in the hallway, hiding work files that Ms. Bruner needed to complete her work assignments, stealing personal property from Ms. Bruner's desk, deleting files from the City's shared computer database, and invading

Ms. Bruner's personal space. (*Id.* at 3-4). On August 4, 2016, Ms. Bruner filed an employment discrimination complaint with the City's Equal Opportunity Department ("EOD") regarding Ms. Chavez's conduct. (*Id.* at 4; Doc. 132-1 at 11-12). Ms. Chavez's conduct continued and on May 31, 2017, Ms. Bruner filed a second EOD complaint alleging that Ms. Chavez has retaliated against her. (Doc. 132 at 4.; Doc. 132-1 at 13-14).

After Ms. Bruner filed her two EOD complaints, Ms. Chavez threatened Ms. Bruner with physical violence on four or five separate occasions and called Ms. Bruner a rat. (Doc. 132 at 4). Mr. Mike Edwards, a Human Resource Specialist at the Water Department, devised a "safety plan" for Ms. Bruner in the event that Ms. Chavez threatened her again. (*Id.* at 5). On August 10, 2017, Ms. Bruner filed an EEOC Charge against the City.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute must also be "genuine . . . such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Furthermore, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). The Court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted. *Jesinger*, 24 F.3d at 1131.

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must

establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). However, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## III.     DISCUSSION

As an initial matter, it is important to clarify that Plaintiffs' racial discrimination claims were previously dismissed. (Doc. 120). Additionally, in their Responses, Plaintiffs provide that they are not asserting sexual harassment claims. (Doc 32 at 8 n.3; Doc. 133 at 8 n.4). Thus, Plaintiffs only remaining claims are Title VII retaliation claims. To succeed on a retaliation claim under Title VII, a plaintiff must prove "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Initially, the burden rests with the plaintiff to establish a *prima facie* case of retaliation. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of Title VII retaliation, a plaintiff must show "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006). On the second prong, an action is cognizable as an adverse employment action if it is based on a retaliatory motive and is reasonably likely to deter employees from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (adopting the EEOC guideline standard, which is also used in the First, Seventh, Tenth, Eleventh and D.C. Circuits). In other words, only "non-trivial" employment actions can ground a retaliation claim. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see also Kunzler v. Rubin*, 2001 WL 34053243, at *7 (D. Ariz. Sept. 27, 2001).

### A. Ms. Cerda's Retaliation Claim

#### i. *Protected Activity*

The first step is to determine whether Ms. Cerda engaged in protected activity. An individual engages in protected activity under Title VII when the individual has a "reasonable belief" that the employment practice being opposed is prohibited under Title VII. *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (collecting cases); *see also Alozie v. Arizona Bd. of Regents,* 431 F. Supp. 3d 1100, 1115 (D. Ariz. 2020), *reconsideration denied*, 2020 WL 836528 (D. Ariz. Feb. 20, 2020). Ms. Cerda claims she engaged in protected activity by (1) repeatedly complaining to her supervisors about Ms. Chavez's discriminatory harassment, (2) participating in the City's internal investigation of Ms. Bruner's two EOD complaints, and (3) filing her August 15, 2017 EEOC Charge of Discrimination. (Doc. 113 at 11-12).

Ms. Cerda's August 15, 2017 EEOC Charge of Discrimination was protected activity because it alleged discrimination. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Ms. Cerda's participation as a witness in the City's internal investigation of Ms. Bruner's EOD complaints is also protected activity. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, 2003 WL 21027351 (9th Cir. May 8, 2003); *E.E.O.C. v. Creative Networks, LLC,* 2010 WL 276742, at *8 (D. Ariz. Jan. 15, 2010). Accordingly, Ms. Cerda's interviews with EOD on August 12, 2016, May 10, 2017, and May 17, 2017, were protected activity. (Doc. 136 at 6).

Ms. Cerda's informal complaints to her supervisors, however, were not protected activity. Informal complaints to an employee's supervisor can constitute protected activity under Title VII. *See Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). However, the employee must reasonably believe that the complained-of conduct fairly falls within the protections of Title VII to constitute protected activity for purposes of a retaliation claim. *Maner v. Dignity Health*, 350 F. Supp. 3d 899, 908-09 (D. Ariz. 2018); *see also Sherrill v. Blank,* 2013 WL 11312398, at *2 (D. Ariz. Nov. 26, 2013) ("However, Title

VII's anti-retaliation provision does not make actionable retaliation against an employee that is not engaged in "protected activity" within the meaning of Title VII."); *Padilla v. Bechtel Const. Co.*, 2007 WL 1219737, at *5 (D. Ariz. Apr. 25, 2007) ("Case law has clarified that Title VII's anti-retaliation provision and analogous provisions in other federal anti-discrimination statutes do not make actionable retaliation against an employee that is not 'protected activity' within the meaning of Title VII.").

From late 2010 or early 2011 to 2017, Ms. Cerda made informal complaints to her supervisors. (Doc. 133-1 at 3-8 ¶¶ 9, 12, 20, 26, and 36). The subject matter of these complaints can be broken into three general categories: racial, sexual, and general workplace disputes.[3] However, for reasons previously noted, Ms. Cerda is precluded from introducing claims of racial harassment to support her retaliation claim, thus the Court will not address whether her complaints of racial harassment constitute protected activity. (Doc. 120 at 60). The complaints of sexual comments include Ms. Chavez telling coworkers that Ms. Cerda was having sex with coworkers at work, dancing for male coworkers in the work breakroom, and "committing adultery on [her] husband." (Doc. 133-1 at 3-8 ¶¶ 5, 6, and 17). The general workplace dispute complaints include Ms. Chavez's conduct that "undermined the timeliness and quality" of Ms. Cerda's work; Ms. Chavez's comments that her "husband was a member of a street gang . . . and knew how

---

[3] In her affidavit, Ms. Cerda claims that she repeatedly complained of Ms. Chavez's sexual comments to her supervisors from 2010 to 2017. (Doc. 1331- at 3 ¶ 9). However, that allegation is inconsistent with her prior deposition testimony, her August 15, 2017 EEOC Charge, and other evidence in the record. Moreover, Ms. Cerda fails to identify any support for her allegation that she repeatedly complained to her supervisors of Ms. Chavez's sexual comments. This Court need not hunt through Ms. Cerda's exhibits to find support for her arguments. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("[J]udges are not like pigs, hunting for truffles buried in briefs."). Nonetheless, the Court has closely reviewed Ms. Cerda's exhibits. While the record is replete with evidence of Ms. Cerda's complaints to her supervisor of Ms. Chavez's racial comments, the same cannot be said of her complaints regarding Ms. Chavez's sexual comments. (Doc. 133-2 at 8, 12, 13, 15, 16, 19, 26, and 27; Doc 129-1 at 132-37). From its review of these exhibits, the Court could only find evidence that Ms. Cerda complained on one occasion regarding Ms. Chavez's sexual comments. Specifically, in 2011, she notified the City's Human resources department that Ms. Chavez told coworkers that she had sex with another City employee. (Doc. 133-2 at 10). Because the Court is mindful that at the summary judgment stage it may not make credibility determinations or weigh conflicting evidence, the Court will assume for the purposes of this Motion, that Ms. Cerda did in fact notify her supervisors on more than once occasion of Ms. Chavez's sexual comments.

to 'take care of problems"; Ms. Chavez's refusal to work on group assignments with Ms. Cerda; Ms. Chavez's complaints to Ms. Cerda's supervisors that she was "stupid, lazy, talking on the phone all of the time, sleeping on the job, slamming doors, slamming books down, slamming the phone down, spending too much time in the bathroom, . . . taking too long of breaks, and taking too long for lunch"; and Ms. Chavez's attempt to run Ms. Cerda over with her car. (*Id.* ¶¶ 12, 15-21, 24, 25, 33, and 35).

The City contends that the sexual and general workplace disputes complaints cannot be protected activity because the complained of conduct is not protected under Title VII. (Doc. 136 at 4-5). The Court agrees. *See Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018) ("[T]he complaint must indicate that discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.") (internal quotations and citations omitted)); *Rivas v. Steward Ventures, Inc.*, 2007 WL 496767, at *4 (D. Ariz. Feb. 13, 2007) (holding that plaintiff had failed to present evidence that she was harassed because of sex, despite presenting evidence of her supervisor frequent use of sexually-explicit language in her presence and physically threatening and intimidating plaintiff, including attempting to run her over with a van).

However, a plaintiff need not prove that the complained of conduct was in fact unlawful under Title VII; rather, a plaintiff need only show that she had a "reasonable belief" that the conduct she complained of was prohibited under Title VII. *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). Ms. Cerda, however, provides no evidence that that she reasonably believed that Ms. Chavez's conduct contained in her sexual and general workplace disputes complaints was prohibited under Title VII. In her Affidavit, Ms. Cerda states that she felt that Ms. Chavez's comments regarding her alleged sexual activities in the workplace made her feel like a "sex object" and "uncomfortable"; however, she does not allege that she reasonably believed that these comments were

because of her sex.[4] *See Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'") (alteration in original); *Nichols v. Azteca Rest. Enterprises, Inc*., 256 F.3d 864, 872 (9th Cir. 2001) (citing *Oncale*, 523 U.S. at 79) (holding "harassment is actionable under Title VII to the extent it occurs 'because of' the plaintiff's sex."). Furthermore, Ms. Cerda states that the conduct complained of in her general workplace disputes made her "fear" Ms. Chavez, but she does not allege that she believed that the conduct was prohibited by Title VII. *See Gutierrez v. Kaiser Found. Hosps., Inc*., 2012 WL 5372607, at *6 (N.D. Cal. Oct. 30, 2012) ("While a plaintiff need not have invoked 'magic words' in order for his complaints to constitute protected activity, he must have alerted his employer to his belief that discrimination, not merely unfair personnel treatment, had occurred."). In other words, Ms. Cerda has failed to establish that her complaints to her supervisors constitutes protected activity because she failed to provide evidence that she reasonably believed that the complained of conduct was prohibited by Title VII. *Parker v. Otis Elevator Co*., 9 Fed. Appx. 615, 617 (9th Cir. 2001) ("There is, however, nothing in the record to suggest that Parker thought the relationship violated Title VII; therefore, his complaints are not protected activity."); *Lemley v. Graham County*, 2013 WL 5346308, at *7 (D. Ariz. Sept. 23, 2013) ("There is no genuine issue of material fact supporting Plaintiff's claim that he believed that he was observing gender or national origin discrimination against Miller or that he raised concerns about gender or national origin discrimination."), *aff'd*, 632 Fed. Appx. 324 (9th Cir. 2015).

Accordingly, Ms. Cerda's protected activity is limited to her August 12, 2016, May 10, 2017, and May 17, 2017 interviews with EOD investigators and her August 15, 2017 EEOC Charge of Discrimination.

---

[4] In same-sex harassment cases, a plaintiff may show that harassment was because of sex by presenting evidence (1) that the harasser was motivated by sexual desire, (2) that the harasser was motivated by a general hostility toward women in the workplace, (3) that the harassment was based on gender stereotyping, or (4) that the harassment involved physical conduct of a sexual nature. *Villa v. Arizona,* 2019 WL 1858138, at *16 (D. Ariz. Apr. 25, 2019) (citing *Oncale* 523 U.S. at 80-81; *Nichols v. Azteca Rest. Enterprises, Inc*., 256 F.3d 864, 874-75 (9th Cir. 2001)).

### *ii.* *Adverse Employment Actions*

A retaliation claim requires that plaintiff engaged in protected activity and that she was "subsequently" subjected to an adverse employment action. *Nguyen v. McHugh*, 65 F. Supp. 3d 873, 901 (N.D. Cal. 2014), *aff'd sub nom. Huyen Nguyen v. Esper*, 722 Fed. Appx. 688 (9th Cir. 2018). This Court will only consider adverse employment actions that occurred after Ms. Cerda first engaged in protected activity on August 12, 2016. *Clark v. City of Tucson*, 2018 WL 1942771, at *14 (D. Ariz. Apr. 25, 2018) (refusing to address factual allegations that occurred prior to protected because those allegations could not be construed as retaliation since the protected activity had yet to occur). Additionally, Ms. Cerda and Ms. Chavez have not had any contact since April 2017. Accordingly, the relevant time period for the adverse employment action analysis is from August 12, 2016 to April 2017.

Ms. Cerda argues that after engaging in protected activity she was subjected to a hostile work environment as retaliation. (Doc. 133 at 12-13). "A hostile work environment can be the basis for a retaliation claim if the harassment is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hale v. Haw. Publ'ns, Inc.*, 468 F.Supp.2d 1210, 1225 (D. Haw. 2006) (quoting *Ray*, 217 F.3d at 1245). Moreover, an employer may be liable for harassment by coworkers if a plaintiff shows a hostile work environment that management knew or should have known about and failed to take prompt, corrective action. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001) ("If, however, the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent, i.e. that the employer knew or should have known of the harassment but did not take adequate steps to address it.").

Harassment is actionable only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Discourtesy or rudeness is insufficient. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Title VII is not a general civility code. *Id*. at 788; *EEOC v. Prospect Airport Services, Inc.*, 621 F.3d 991,

1000 (9th Cir. 2010) (A Title VII violation "is not established merely by evidence showing sporadic use of abusive language, gender-related jokes and occasional teasing."). The harassment must be more than episodic; it must be "sufficiently continuous and concerted in order to be deemed pervasive." *Id*.; *Westendorf v. West Coast Contractors of Nevada, Inc*., 712 F.3d 417 (9th Cir. 2013) (finding remarks on women's breast sizes, comments about tampons and multiple orgasms, and the suggestion the plaintiff clean his trailer in a French maid's outfit were not sufficiently pervasive). The environment must be both subjectively and objectively offensive; that is, it must have offended the plaintiff in the case as well as be offensive to a reasonable woman in that environment. *Id*.

It is difficult for this Court to ascertain the specific dates or even general time period that the harassment that forms the basis of Ms. Cerda's retaliatory hostile work environment claim occurred; however, it is clear that much of it happened prior to 2016. (*See* Doc. 131-1 at 3-5 ¶¶ 9, 12, 15-21). Nonetheless, viewing the record in the light most favorable to Ms. Cerda, after she engaged in protected activity, Ms. Chavez harassed Ms. Cerda by: (1) complaining to Ms. Cerda's supervisors that she was neglecting or otherwise not performing her job duties; (2) filing a written complaint in August 2017 alleging that Ms. Cerda called her a bitch; (3) physically threatening Ms. Cerda on three or four occasions; and (4) attempting to run Ms. Cerda over with her car in April 2017. (*Id.* at 5-8 ¶¶ 24, 27, 33, 35).

Ms. Cerda's Response makes it incomprehensible for the Court to determine the frequency or severity of Ms. Chavez's harassment after Ms. Cerda engaged in protected activity. *See Morton v. ALS Services USA Corp.,* 2012 WL 3578857, at *5 (D. Ariz. Aug. 20, 2012) (holding that without factual details the court is left to guess when the harassment occurred and the severity of the harassment). Moreover, in her deposition when asked about Ms. Chavez's August 2017 internal complaint against her, Ms. Cerda stated that she "hadn't worked with [Ms. Chavez]" or even interacted with her for the prior two years. (Doc. 129-1 at 92). Thus, Ms. Cerda's own deposition testimony casts doubt on the pervasiveness of Ms. Chavez's harassment from August 2016 to April 2017. Additionally,

it is uncontroverted that after Ms. Chavez attempted to run Ms. Cerda over with her car, the two women were physically separated, the City implemented a safety plan for Ms. Cerda in the event Ms. Chavez came to the building, and the two women had no contact after that incident. (Doc. 129-1 at 50). Thus, the City's response to the incident cannot be fairly characterized as encouragement or toleration of Ms. Chavez's behavior. Moreover, there is evidence that on numerous occasions the City took action to address the allegations made regarding Ms. Chavez's behavior, including holding meetings and trainings. (Doc. 133-2 at 16). In short, Ms. Cerda has failed to present evidence from which a reasonable jury could conclude that the City allowed Ms. Chavez to harass Ms. Cerda after Ms. Cerda engaged in protected activity on August 12, 2016, resulting in an adverse employment action.

Additionally, Ms. Cerda fails to identify any evidence to suggest that she suffered a material adverse consequence as a result of Ms. Chavez's harassment. Rather, despite Ms. Chavez's behavior, Ms. Cerda's "supervisors continued to praise [her] work." (Doc. 133-1 at 5 ¶ 19). Absent a showing of injury or harm, Ms. Cerda's testimony fails to provide evidence of actionable conduct under Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *Morton*, 2012 WL 3578857, at *5.

In sum, Ms. Cerda has failed to present evidence of an adverse employment action that would support a claim for retaliation. Accordingly, the City is entitled to summary judgment on her claim of Title VII retaliation.

### B. Ms. Bruner's Retaliation Claim

#### i. *Protected Activity*

Ms. Bruner's August 10, 2017 EEOC Charge of Discrimination was protected activity because it alleged discrimination. *Ray*, 217 F.3d at 1240. Similarly, her August 4, 2016, and May 31, 2017 EOD complaints are protected activity because she alleged that she was discriminated against because of her sex and retaliated for engaging in protected

activity. (Doc. 128-1 at 137-38).

Ms. Bruner also claims that she engaged in protected activity by repeatedly complaining to her supervisors about Ms. Chavez's discriminatory harassment. (Doc. 132 at 11). Similar to Ms. Cerda's complaints, Ms. Bruner's complaints can be broken into three categories: sexual, racial, and general workplace disputes.[5] For a complaint to be protected activity, a plaintiff does not need to prove that the complained-of conduct was in fact unlawful under Title VII; rather, a plaintiff need only show that she had a "reasonable belief" that the conduct she complained of was prohibited under Title VII. *Trent*, 41 F.3d at 526. Ms. Bruner has not provided evidence to support her claim that she reasonably believed that the general workplace disputes were prohibited under Title VII, and therefore, those complaints cannot be considered protected activity.

Ms. Bruner has claimed that she reasonably believed that the sexual comments made by Ms. Chavez were based on her sex. (Doc. 128-1 at 44-45, 74, 76-78). The Court, however, finds that no reasonable jury could find that Ms. Bruner's belief was reasonable. There is simply no evidence in the record to support the allegation that Ms. Chavez's sexual comments were motivated by sexual desire, a general hostility toward women in the workplace, or gender stereotyping. *See Villa*, 2019 WL 1858138, at *16; *Rivas v. Steward Ventures, Inc.*, 2007 WL 496767, at *4 (D. Ariz. Feb. 13, 2007) (holding that plaintiff had failed to present evidence that she was harassed because of sex, despite presenting evidence of her supervisor frequent use of sexually-explicit language in her presence and physically threatening and intimidating plaintiff, including attempting to run her over with a van). In other words, the record is devoid of evidence that would allow a jury to conclude that Ms. Bruner's reasonably believed that Ms. Chavez's sexual comments were because of Ms. Bruner's sex.

Accordingly, Ms. Bruner's protected activity is limited to her August 4, 2016, and May 31, 2017 EOD complaints and her August 10, 2017 EEOC Charge.

---

[5] As previously mentioned, this Court will not consider any claims of racial harassment.

### *ii.     Adverse Employment Action*

Ms. Bruner claims that she was subjected to a hostile work environment as retaliation for her protected activity. (Doc. 132 at 12-13). As with Ms. Cerda's claims, it is difficult for this Court to ascertain the specific dates or even general time period that the harassment that forms the basis of Ms. Burner's retaliatory hostile work environment claim occurred; however, it is clear that much of it happened prior to August 4, 2016. (*See* Doc. 132-1 at 3-6 ¶10).

Nonetheless, viewing the record in the light most favorable to Ms. Bruner, after she engaged in protected activity, Ms. Chavez harassed her by: (1) calling Ms. Bruner a rat, and threatening Ms. Bruner with physical violence, (2) telling Ms. Bruner that "her ex-husband was a member of a criminal street gang" and that "he was going to take care of the problem", and (3) telling Ms. Chavez that she could "'get rid of' [her] and '[her] family' with a mere 'phone call[.]'" (Doc. 132-1 at 3-6). Yet, Ms. Bruner's Response lacks the specificity needed for the Court to determine the frequency or severity of Ms. Chavez's harassment after Ms. Bruner engaged in protected activity. *See Morton,* 2012 WL 3578857, at *5 (holding that without factual details the court is left to guess when the harassment occurred and the severity of the harassment); *see also Prospect Airport Services, Inc.*, 621 F.3d at 1000 (A Title VII violation "is not established merely by evidence showing sporadic use of abusive language, gender-related jokes and occasional teasing.").

Similar to Ms. Cerda, Ms. Bruner fails to identify any evidence to suggest that she suffered a material adverse consequence as a result of Ms. Chavez's harassment. Rather, despite Ms. Chavez's behavior, Ms. Bruner testified at her deposition that she would rate her job performance as "good" and that nothing has interfered with her ability to do her job and be successful. (Doc. 128-1 at 53-54). Absent a showing of an adverse consequence, Ms. Bruner's evidence fails to provide evidence of actionable conduct under Title VII. *See Burlington*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *Morton*, 2012 WL

3578857, at *5.

In sum, Ms. Bruner has failed to present evidence of an adverse employment action that would support a claim for retaliation. Accordingly, the City is entitled to summary judgment on her Title VII retaliation claim.

## IV.     CONCLUSION[6]

Although her conduct is wholly inappropriate, Plaintiffs have failed to present evidence that Ms. Chavez's behavior is actionable under Title VII.  As neither Plaintiff has provided the evidence necessary to make a *prima facie* case of Title VII retaliation, the City's Motions for Summary Judgment will therefore be granted.

Accordingly,

**IT IS ORDERED** that Defendant City of Phoenix's Motion for Summary Judgment on Plaintiff Cerda's Claim (Doc. 129) and Motion for Summary Judgment on Plaintiff Bruner's Claim (Doc. 128) are **GRANTED**.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

Dated this 2nd day of September, 2020.

Honorable Diane J. Humetewa
United States District Judge

---

[6] While the work-place conduct of the City's employees is wholly unbecoming and, in many ways, shocks the conscience, this Court is mindful that Title VII is not a law designed to impose general rules of workplace civility or to resolve backbiting among coworkers.